**THE LAW OFFICES OF GEORGE RIKOS**
   George Rikos (SBN 204864)
   Rosa Shelton (SBN 283182)
1307 Stratford Court
Del Mar, Ca 92014
Telephone: (858) 342-9161
Facsimile: (858) 724-1453
Email: George@georgerikoslaw.com

**NICHOLAS & BUTLER, LLP**
   Craig M. Nicholas (SBN 178444)
   Alex M. Tomasevic (SBN 245598)
   Mei-Ying Imanaka (SBN 280472)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone:   (619) 325-0492
Facsimile:   (619) 325-0496
Email: cnicholas@nblaw.org
Email: atomasevic@nblaw.org
Email: mimanaka@nblaw.org

Attorneys for Plaintiff Renata Bonar

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RENATA BONAR, an individual; on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>    Plaintiffs,<br><br>vs.<br><br>BEAM GLOBAL SPIRITS & WINE, INC., and DOES 1-25, Inclusive,<br><br>    Defendants. | CASE NO.:   11-cv-02058-CAB-KSC<br><br>***EX PARTE* APPLICATION FOR CONTINUANCE OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO ALLOW MRS. BONAR THE OPPORTUNITY TO RECEIVE NECESSARY DISCOVERY**<br><br>The Honorable Cathy Ann Bencivengo<br>Courtroom 2<br><br>Complaint filed: 9/6/11 |

Plaintiff Renata Bonar applies *ex parte* for a continuance of Defendant Beam Global Spirits & Wine, Inc. ("Beam Global") motion for summary judgment. (Declaration of Rosa E. Shelton, ¶ 2.) Beam Global has stated it would oppose any such request to continue the hearing on the motion for summary judgment. (*Id.*; Exh. A [email chains and correspondence].) The continuance is necessary to allow Ms. Bonar the opportunity to conduct discovery related to the motion for summary judgment, and to meet and confer with opposing counsel regarding its refusal to produce documents related to the motion for summary judgment – documents which it put at issue in its motion.

## I.

## INTRODUCTION

Ms. Bonar requests the Court continue Defendant's motion for summary judgment. There is good cause to grant this continuance. (Shelton Dec., ¶ 3.) Beam Global has filed a motion for summary judgment based upon standing and its claims that it does not have successor liability. (*Id.*) While Beam Global has masked their motion for summary judgment as a simple issue by pointing solely to its own agreement that it did not assume its predecessor's liabilities, the issues are actually much more complex. (*Id.*) Discovery related to the sale and purchase of the Skinnygirl products, how much was paid for the product, what benefits the seller is still receiving, and the intent of Beam Global to capitalize on the good will of the product and its creator, are all necessary for Ms. Bonar to oppose the motion. Defendant refuses to disclose this information. Ms. Bonar therefore requests the motion for summary judgment be continued until such time that the discovery issues are resolved or deny the motion for summary judgment without prejudice. (*Id.*)

## II.

## BACKGROUND

Ms. Bonar filed the Complaint on September 6, 2011. Beam Global filed an Answer on February 13, 2012. The parties have diligently conducted discovery since that time. (Shelton Dec., ¶ 4.) On November 29, 2012, Beam Global filed a motion for summary judgment based upon an alleged lack of standing on the part of Ms. Bonar. (Doc. No. 50.) Beam, in short, claims

that its predecessor entity actually owned the product at issue in this litigation, not Beam, and that Beam, despite now owing the offending product, cannot be held liable.

Beam Global based its entire motion for summary judgment on the heavily redacted "Asset Purchase Agreement." In order to obtain more information in an effort to oppose the motion for summary judgment, Ms. Bonar served discovery related to the sale and purchase of the product at issue by Beam Global, to flesh out the true details of the transaction. (Shelton Dec., ¶ 5.) The deadline for Beam to produce documents was January 22, 2013. (*Id*.)

On January 22, 2013, Beam Global served responses to document requests, but did *not* produce any documents. Beam also objected to many of the requests. (Shelton Dec., ¶ 6.) After counsel for Ms. Bonar inquired as to the status of the tardy document production, Beam Global stated that it would use its "best efforts" to produce the documents. (*Id*.) Ms. Bonar sent additional correspondence requesting the documents as soon as possible, and pointed out that she was unable to meet and confer regarding Beam Global's objections until the documents were produced to determine exactly what Beam Global was withholding. Plaintiff's counsel was unable to determine if the deposition of Beam Global's 30(b)(6) was necessary until after receipt of the documents. (*Id*.)

On January 26, 2013, Beam Global produced documents (Shelton Dec., ¶ 7.) The documents only consisted of a still incomplete (and still redacted) version of the "Asset Purchase Agreement," along with corresponding schedules which should have been produced and attached to the Asset Purchase Agreement when it was originally served (additional attachments to the Asset Purchase Agreement have, as Beam admits, still not been produced.) No other documents were produced in connection with the 28 requests Ms. Bonar served all aimed at flushing out the issues related to Beam Global's motion for summary judgment. (*Id*.) The documents were served via an online electronic database, and Ms. Bonar's counsel was unable to properly view the documents until January 28, 2013.

On January 28, 2013, counsel for both parties attended an in-person meet and confer regarding the documents at issue. (Shelton Dec., ¶ 8.) At the meet and confer, counsel for Ms. Bonar advised opposing counsel of the need for the discovery as it relates to the motion for

1  summary judgment in order for Ms. Bonar to determine whether the transaction between Beam
2  and its predecessor was simply an asset purchase (which might support Defendant's pending
3  motion for summary judgment) or was really, in substance, a de facto merger with the predecessor
4  (which would undercut Defendant's motion and argument that it has no liability).   (*Id.*) Counsel
5  for Beam Global unilaterally rejected, without any real analysis, the notion that there could be a de
6  factor merger, and concluded that all of the documents relating to whether or not Beam Global
7  retained successor liability were in the Asset Purchase Agreement. (*Id.*)  Counsel for Ms. Bonar
8  advised that the Court can and will consider other documents and evidence not found in the Asset
9  Purchase Agreement and gave a case cite to case law for Beam Global to review.

10     Furthermore, Ms. Bonar is unable to take the deposition of Beam Global's 30(b)(6) on this
11  topic – which will require travel to Chicago  -  without the necessary documents and it appears
12  that the Parties are currently at an impasse on the discovery related to the motion for summary
13  judgment. (Shelton Dec., ¶ 9; *See* Exs. B and C.)

## III.

## MS. BONAR NEEDS THE DISCOVERY TO INVESTIGATE A DEFENSE WHICH BEAM GLOBAL IS NOW CLAIMING AND WHICH IT HAS PUT AT ISSUE

17     Beam Global would love nothing more than for this Honorable Court to accept, at face
18  value, that Beam's purchase of SkinnyGirl Cocktails was an "Asset Purchase" and nothing more.
19  The agreement with the predecessor is titled, after all, "Asset Purchase Agreement."  But just like
20  an employer calling an employee "exempt," or an "independent contractor" is not dispositive in
21  employment law, simply calling a transaction an "Asset Purchase" does not make it so.

22     Beam put at issue, but, unfairly, will not let Ms. Bonar explore defenses to Beam's motion
23  for summary judgment.  One defense that must be explored before the motion can be decided, is
24  the de facto merger doctrine.  The de facto merger doctrine creates an exception to the general
25  principle that an acquiring corporation does not become responsible for the pre-existing liabilities
26  of an acquired entity – the very same principle that Beam relies on in its Motion for Summary
27  Judgment. (*Sweatland v. Park Corp.,* 181 A.D.2d 243, 245–246; *See also* Dkt. 50 at p. 5.) This
28  doctrine applies when the acquirer (Beam here) has effectively merged with the acquired

corporation (SkinnyGirl here). The hallmarks of a de facto merger include: continuity of ownership; cessation of ordinary business and dissolution of the acquired corporation as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, continuity of management, personnel, physical location, assets and general business operation. (*Sweatland v. Park Corp.,* 181 A.D.2d 243, 245–246).[1]

Not all of these elements are necessary to find a de facto merger. Courts will look to whether the acquiring corporation was seeking to obtain for itself intangible assets such as good will, trademarks, patents, customer lists and the right to use the acquired corporation's name (*see, Wensing v. Paris Indus.,* 158 A.D.2d 164, 558 N.Y.S.2d 692). The concept upon which this doctrine is based is "that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased" (*Grant–Howard Assoc. v. General Housewares Corp.,* 63 N.Y.2d 291, 296, 482 N.Y.S.2d 225, 472 N.E.2d 1.)

Here, Beam Global has redacted information relating to the purchase price of the products, which could include whether any of the predecessors received stock options in Beam Global. (Shelton Dec., ¶ 10.) This is important because it could point to continuity of ownership of the product between the predecessor companies and/or individuals and Beam Global. Additionally, Beam Global redacted from the Asset Purchase Agreement and refused to respond to discovery requests seeking indemnity agreements, which are relevant to show the sharing of liability of the parties involved. (*Id*.) Beam Global also refused to produce any communications related to the Asset Purchase Agreement or any due diligence which would tend to show the intent of Beam Global to purchase the good will of the company, which is another factor the Court can look to in determining whether successor liability should be imposed. (*Id.*; *Wensing v. Paris Indus.,* 158 A.D.2d 164 (1990).) In short, Beam Global injected all of these issues into this case, and now refuses to divulge any further information which would allow the Court and Ms. Bonar to

---

[1] The "Asset Purchase Agreement" has a New York choice-of-law clause.

effectively evaluate its claims, and asks the Court to rush to summary judgment on an incomplete record. Without this discovery, neither Ms. Bonar nor the Court can adequately address the issues that Beam put forward in its pending motion for summary judgment.

### III.
### THE COURT SHOULD GRANT PLAINTIFFS' REQUEST FOR A CONTINUANCE BECAUSE GOOD CAUSE EXISTS

There is good cause to grant a continuance of the motion for summary judgment:

1. Beam Global put the SkinnyGirl "asset purchase" at issue and asks the court to assume that, true to its label, the transaction was and *only was* an "asset purchase."
2. Ms. Bonar served discovery aimed at fleshing out Beam's defense but Beam does not want the discovery to go forward. And for those limited materials that Beam *did* produce, such as portions of the "Asset Purchase Agreement," Beam redacted them heavily, without justification, and even though the redacted portions could speak directly to the issues Beam put forward in their motion for summary judgment.
3. Ms. Bonar is unable to fully oppose Beam's motion for summary judgment until the discovery issues are resolved. Beam Global's attempt to block discovery related to issues that it itself made a focal point is inappropriate given the circumstances.
4. Issues of fact remain unresolved as a result of Beam Global's unilateral statements that the discovery is not relevant.

## IV.

## **CONCLUSION**

For the reasons outlined above, Ms. Bonar respectfully requests the Court grant a continuance of the motion for summary judgment until these discovery issues are resolved. Ms. Bonar is currently preparing her portion of the "Joint Motion" to compel this information from Beam and, once that is resolved, will complete the deposition of Beam's 30(b)(6) representative in Chicago. Ms. Bonar will then be ready to file her opposition to Beam's pending motion 21 days thereafter. Therefore, a continuance of 60-days is likely sufficient.

Respectfully submitted,

Dated: February 1, 2013           By: ___s/ Rosa Shelton_____
                                      Rosa Shelton
                                      Attorneys for Plaintiff Renata Bonar